IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IDA GARCIA, | ) |
| Claimant, | ) No. 18 C 1408 |
| v. | ) Jeffrey T. Gilbert<br>) Magistrate Judge |
| NANCY BERRYHILL,[1] Acting<br>Commissioner of Social Security, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Ida Garcia ("Claimant") seeks review of the final decision of Respondent Nancy Berryhill, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings including entry of final judgment. [ECF No. 5]. The parties have filed cross-motions for summary judgment [ECF Nos. 12 and 20]. For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 12] is granted, and the Commissioner's Motion [ECF No. 20] is denied. This matter is remanded for further proceedings consistent with this Memorandum Order and Opinion.

## I. PROCEDURAL HISTORY

Claimant filed an application for DIB on August 4, 2014, alleging a disability onset date of May 1, 2014. (R. 14.) The application initially was denied on December 5, 2014, and was denied upon reconsideration on August 6, 2015, after which Claimant requested an administrative hearing before an administrative law judge ("ALJ"). (*Id.*) On January 27, 2017, Claimant,

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

represented by counsel, appeared and testified at a hearing before ALJ Edward Studzinski. (*Id.*) The ALJ also heard testimony from vocational expert ("VE") Glee Ann L. Kehr. (*Id.*)

On May 26, 2017, the ALJ denied Claimant's application for DIB, based on a finding that she was not disabled under the Act. (R. 14-28.) The opinion followed the five-step evaluation process required by Social Security Regulations ("SSRs").[2] 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since Claimant's alleged onset date of May 1, 2014. (R. 16.) At step two, the ALJ found that Claimant had the severe impairments of anxiety, depression, and degenerative joint disease. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (*Id.*) The ALJ then assessed Claimant's residual functional capacity ("RFC")[3] and concluded:

> [C]laimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in her ability to sit, stand or walk throughout an 8 hour workday. The claimant can occasionally climb ramps and stairs, and she can occasionally stoop, kneel, balance, crouch and crawl, but she can never climb ladders, ropes or scaffolds. The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and unguarded large bodies of water, and she should avoid concentrated exposure to unguarded hazardous machinery. The claimant is further limited to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. She ought not perform work which requires multitasking.

---

[2] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

> She could perform work requiring an average production pace, but is incapable of significantly above average or highly variable production pace work. She ought not perform work which requires significant self-direction. She is further precluded from work involving direct public service, in person or over the phone, although the claimant can tolerate brief and superficial interaction with the public, which is incidental to her primary job duties. She is unable to work in crowded, hectic environments. The claimant can tolerate brief and superficial interaction with supervisors and co-workers but is not to engage in tandem tasks.

(R. 18-19.) Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 27.) Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id.*) Specifically, the ALJ found Claimant could work in housekeeping (DOT # 323.687-014). (*Id.*) The Appeals Council declined to review the matter on December 27, 2017, making the ALJ's decision the final decision of the Commissioner, and, therefore, reviewable by this Court pursuant to 442 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d

3

589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

On appeal, Claimant asserts the ALJ made three errors. First, Claimant argues that the ALJ improperly weighed the opinion evidence of her treating psychiatrist and treating primary care physician. Second, Claimant contends that the ALJ erred in evaluating Claimant's subjective symptoms statement. Third, Claimant asserts that the ALJ failed to consider Claimant's mental impairments in combination with her physical impairments when assessing Claimant's RFC.

#### A. The Treating Physicians' Opinions

The Court first addresses Claimant's argument that the ALJ failed to give controlling weight to the opinions of her treating psychiatrist, Dr. James Patras, and her treating primary care physician, Dr. Maggie Chacko. [ECF No. 13], at 9, 10. An ALJ must give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record.[4] 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d

---

[4] The Social Security Administration has adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. *See id.*

4

734, 739 (7th Cir. 2011). Because a treating physician has "greater familiarity with the claimant's condition and circumstances," an ALJ may only discount a treating physician's opinion based on good reasons "supported by substantial evidence in the record." *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Those reasons must be "supported by substantial evidence in the record; a contrary opinion of a non-examining source does not, by itself, suffice." *Campbell*, 627 F.3d at 306.

"Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, [he] has to decide what weight to give that opinion." *Campbell*, 627 F.3d at 308. To do this, the ALJ considers a variety of factors, including: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) whether the physician was a specialist in the relevant area; and (6) other factors that validate or contradict the opinion. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); 20 C.F.R. § 404.1527(c)(2)-(6).

### 1. Dr. Patras's Medical Opinion

Dr. James Patras M.D. is a psychiatrist who has treated Claimant for her psychological disorders since August 1, 1997. (R. 25, 497.) Dr. Patras completed a mental disorder report on December 2, 2014, and a mental residual functional capacity statement dated November 24, 2015. (R. 675-78.) Dr. Patras opined in each report that Claimant displayed signs of major depressive disorder, recurrent, anxiety, and panic attack disorder. (R. 497, 675.) Dr. Patras further opined in his December 2, 2014 mental disorder report that Claimant had conflicts with others and difficulty in group settings and coping with supervisors and co-workers. (R. 497.) Further, Dr. Patras found that Claimant had mild restrictions in daily living, moderate difficulties in maintaining social

5

function, marked difficulties in maintaining concentration, persistence, or pace, and one to two episodes of decompensation of extended duration. (*Id.*)

Dr. Patras's mental residual functional capacity statement contains a more restricted view of Claimant's abilities than what the ALJ ultimately found. (R. 675.) Dr. Patras opines that Claimant is markedly limited in all areas of mental functioning including understanding, remembering, concentration, social interaction, and adaptation. (R. 676-77.) In addition, Dr. Patras opined that Claimant would be "off task" for more than 30 percent of the day and likely would miss work more than six days a month. (R. 677.) Dr. Patras's reason for increasing the severity of Claimant's limitations is, as the Commissioner points out, missing from the record. [ECF No. 21], at 9. On its own, however, this fact is not enough to discount the treating physician's opinion or disregard the regulatory factors laid out in 20 C.F.R. § 404.1527 when assessing a treating physician's opinion.

The ALJ afforded Dr. Patras's mental disorders report "limited weight" and his mental residual functional capacity statement "no weight." (R. 25, 26.) The ALJ accepted a portion of Dr. Patras's mental disorders report, concluding that Claimant was moderately limited in interacting with others and with concentration, persistence, and pace. (R. 25.) However, the ALJ rejected the rest of the report stating that "this report was prepared less than 12 months from the alleged onset date . . . and the record later documents improvement in the claimant's functioning with appropriate compliance with medication and therapy." (*Id.*) As the Seventh Circuit has said, "a person who suffers from mental illness will have better days and worse days," so the ALJ's decision to reject Dr. Patras's report based on some notes indicating improvement is not persuasive. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). In addition, the ALJ outright rejected Dr. Patras's mental residual functional capacity statement finding that "the extreme level

6

of limitation assessed is not supported by Dr. Patras's treatment records or by other mental health treatment records." (R. 26).

The ALJ did not fairly characterize Dr. Patras's clinical findings in the record. Dr. Patras has treated Claimant for roughly 19 years and saw her almost monthly in recent years. (R. 23, 42, 837-843.) Dr. Patras's treatment notes contain clinical findings supportive of Claimant's limitations, including notes that Claimant had been seen at Elmhurst Memorial Hospital numerous times due to uncontrollable anxiety and panic attacks. (R. 841-43.) Further, Dr. Patras's treatment notes, on multiple occasions, memorialize that Claimant had symptoms of major depressive disorder, anxiety, and panic attack disorder which support his conclusion that Claimant cannot secure competitive employment. (R. 497-499, 837-843.)

Dr. Patras's notes are not only internally consistent but also consistent with the treatment notes of other service providers in the record. For example, Claimant saw her primary care physician (discussed below), Dr. Maggie Chacko M.D., who also found that Claimant will be "off task" more than 30 percent of the day and was likely to be absent from work five days or more a month. (R. 674.) In addition, Claimant underwent a psychiatric evaluation with Dr. Joseph Mullen M.D. at Elmhurst Memorial Hospital and her diagnoses of major depressive disorder, severe, and panic disorder were corroborated by Dr. Mullen's evaluation. (R. 427.) In addition, Dr. Mullen reported that "[Claimant] presented in a histrionic manner. Thought process tangential. Attention and concentration were impaired by anxiety. . . insight and judgment impaired." (*Id.*) Finally, Dr. Mullen recommended that Claimant enroll in the hospital's partial hospitalization program. (*Id.*) Claimant also was seen briefly by Dr. Deborah Couch M.D., a psychiatrist at Leyden Family Services, who again corroborated the diagnoses of major depressive disorder, anxiety, and panic attack disorder. (R. 682.)

While the ALJ does not mention Dr. Mullen's assessment or evaluate the weight to give to Dr. Couch's assessment, their corroboration of Dr. Patras's treatment notes undercuts the ALJ's finding that Dr. Patras's mental disorders report and mental residual functional capacity statement should be given "limited" to "no weight." (R. 25-26.) Indeed, it appears not only from Dr. Patras's treatment notes but also the notes of multiple physicians that Claimant often did have mental distress that interfered with her judgment, concentration, and ability to think. With minimal explanation, the ALJ apparently ignored or disregarded Dr. Patras's treatment notes that supported these limitations, and instead only focused on what the ALJ perceived as contradictory evidence in the same notes. (*see e.g.,* R. 24-26.) This selective "cherry-picking" prevents the Court from assessing the reasonableness of the ALJ's decision to afford Dr. Patras's opinions "limited" to "no weight." *Kaminski v. Berryhill*, 894 F.3d 870, 874-875 (7th Cir. 2018); *see Gerstner v. Berryhill*, 879 F.3d 257, 261-63 (7th Cir. 2018); *Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016).

In other words, the ALJ failed to assess Dr. Patras's opinion in conjunction with the entirety of his treatment notes and the consistent treatment notes of other doctors. Instead, the ALJ focused on select clinical findings or notes that he believed indicated that Claimant was making improvements which undercut Dr. Patras's opinion. Courts have found this to be a flaw that supports remand for more thorough analysis. *Samuel v. Berryhill*, No. 17 C 4596, 2018 WL 1706370, at *7 (N.D. Ill. Apr. 9, 2018) (criticizing the ALJ for failing to account for treatment notes when evaluating a medical source statement); *Campbell*, 627 F.3d at 306 ("[a]n ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability.").

Although the ALJ is not required to give Dr. Patras's opinion controlling weight, the ALJ is required to address the factors listed in 20 C.F.R. § 404.1527 to determine what weight to give

the opinion. SSR 92-2p[5] states that treating source medical opinions like Dr. Patras's "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." (*Id.*) Here, the ALJ afforded Dr. Patras's opinion "limited" to "no weight," but failed to address many of the enumerated factors provided in 20 C.F.R. § 404.1527. Other than acknowledging that Dr. Patras was Claimant's treating psychiatrist and had treated her for several years, the ALJ did not discuss, and seemed to disregard, the frequency of examinations, the supportability of the decision, the consistency of his opinion with the record *as a whole*, and the import of Dr. Patras's relevant specialty.

As stated above, Claimant was a patient of Dr. Patras for approximately 19 years, and records from the last few years show that Claimant was treated by Dr. Patras on a frequent basis. (R. 837-843.) Dr. Patras has managed Claimant's medications and made clinical findings based on his sessions with Claimant. (*Id.*) Dr. Patras's opinions are consistent with all the other physicians that examined Claimant. (*Id.*) Many of these factors may favor crediting Dr. Patras's opinion and "proper consideration of these factors may have caused the ALJ to accord greater weight to [Dr. Patras's] opinion." *Campbell*, 627 F.3d at 308. The ALJ's failure to "sufficiently account . . . for the factors in 20 C.F.R. § 404.1527," *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013), prevents the Court from assessing the reasonableness of the ALJ's decision to give little weight to Dr. Patras's opinion.

For these reasons, and particularly in light of Dr. Patras's longitudinal treatment history and familiarity with Claimant's symptoms and conditions, the ALJ did not offer good reasons or

---

[5] The SSA has rescinded SSR 96-2p in connection with its new rules governing the analysis of treating physicians' opinions, but that rescission is effective only for claims filed as of March 17, 2017. See SSR 96-2p, Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298, at *1 (March 27, 2017).

9

sufficient explanation supported by substantial evidence in the record for not giving Dr. Patras's opinions controlling weight. This is a serio error requiring remand.

## 2. Dr. Chacko's Medical Opinion

The ALJ's decision to give Dr. Chacko's medical opinion "limited" weight raises many of the same issues as his decision to give Dr. Patras's opinion "limited" to "no weight" as discussed above. The Court focuses on the ALJ's decision to give limited weight to Dr. Chacko's opinion in the context of Claimant's mental restrictions. Like Dr. Patras, Dr. Chacko diagnosed Claimant with major depressive disorder and anxiety. (R. 671.) Further, Dr. Chacko opined that Claimant would be "off task" more than 30 percent of a work day, absent from work more than five days a month, and unable to complete an 8-hour work day more than five days a month. (R. 674.) The ALJ disagreed.

The ALJ, however, fails to recognize or acknowledge the consistency across medical opinions and states that "Dr. Chacko's assessment of . . . being off task for more than 30% of the workday, and missing more than five days of work per month are not supported by her treatment records or by the objective medical record as a whole." (R. 26.) Without belaboring the point, the Court finds that Dr. Chacko's findings are consistent with the assessments of Dr. Patras, Dr. Mullen, and Dr. Couch. As stated above, these claims do appear to be supported by numerous objective medical records from a variety of medical providers. Because the ALJ selectively has discussed the record, the Court is prevented from assessing the reasonableness of the ALJ's decision to afford the opinion only "limited weight." *Kaminski v. Berryhill*, 894 F.3d 870, 874-875 (7th Cir. 2018); *see Gerstner v. Berryhill*, 879 F.3d 257, 261-63 (7th Cir. 2018); Cole v. Colvin, 831 F.3d 411, 416 (7th Cir. 2016).

In addition, it is not clear that the ALJ considered the factors listed in 20 C.F.R. § 404.1527 to determine the weight to give Dr. Chacko's opinion. The ALJ acknowledged that Dr. Chacko was Claimant's primary care physician and began seeing the Claimant in March 2014. (R. 20.) The ALJ, however, did not discuss the frequency of the examinations, the supportability of the decision, and the consistency of the opinion with the record *as a whole*. As discussed above, many of these factors may favor affording Dr. Chacko's opinion greater weight. *Campbell*, 627 F.3d at 308. The ALJ's failure to "sufficiently account [] for the factors in 20 C.F.R. § 404.1527," *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013), prevents the Court from assessing the reasonableness of the ALJ's decision to give little weight to Dr. Chacko's opinion. For these reasons, the ALJ did not offer substantial evidence for rejecting the opinion of Dr. Chacko, which is an error requiring remand.

The Commissioner contends that the ALJ only needed to address a limited number of enumerated factors in 20 C.F.R. § 404.1527 before affording little to no weight to Dr. Patras's and Dr. Chacko's opinions. The Commissioner draws the Court's attention to two case, *Henke v. Astrue*, 498 F. App'x 636 (7th Cir. 2012) and *Elder v. Astrue*, 529 F.3d 408 (7th Cir. 2008), in which the Seventh Circuit affirmed the denial of benefits event though the ALJs in those cases did not explicitly discuss all of the factors in 20 C.F.R. § 404.1527. [ECF No. 21], at 11; *Henke v. Astrue*, 498 F. App'x 636 (7th Cir. 2012) (holding that a failure to discuss every regulation in 20 C.F.R. § 404.1527 was not an error requiring remand); *Elder v. Astrue*, 529 F.3d 408 (7th Cir. 2008) (affirming the denial of benefits where the ALJ discussed only two of the relevant factors laid out in 20 C.F.R. § 404.1527). The Court, however, is not persuaded by *Elder* or *Henke* in this case.

Many other courts have reiterated that an ALJ should discuss each of the factors listed in 20 C.F.R. § 404.1527 after declining to accord a treating physician's opinion controlling weight. *See Outley v. Colvin*, 204 F. Supp. 3d 989, 1006 (Ill. N.D. Aug. 30, 2016); *see also Lehouillier v. Colvin*, 633 Fed.App'x 328, 334 n. 1 (7th Cir. 2015); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010); *Larson v. Astrue*, 615 F.3d 744 (7th Cir. 2010). In this case, the record contained evidence about the length of Claimant's relationship with her longstanding physicians, both Dr. Patras and Dr. Chacko, as discussed above, the nature of the treatment of her mental health, the consistency of the doctors' reports about her symptoms and treatment for depression and anxiety, and Dr. Patra's specialty as a psychiatrist. The ALJ, however, did not discuss any of these factors in his opinion, so the Court is not in a position to assess whether the ALJ appropriately chose not to give much weight to the treating physicians' opinions. *See Scrogham v. Colvin*, 765 F.3d 685, 697 & n. 48 (7th Cir. 2014) (expressly refusing to deem a failure to discuss all of the factors harmless error, especially as that failure prevented the court from assessing the reasonableness of the ALJ's decision in light of those factors).

For all of these reasons, the Court finds that a remand is appropriate in this case,

**B. Other Issues**

Because this matter is remanded for the errors identified above, the Court declines to address in detail the other arguments posited by Claimant on appeal since the analysis would not change the result in this case. The ALJ, however, should not assume these issues were omitted from the Court's analysis because no error was found. The Court does not take a position on the other arguments raised by Claimant. The Court expresses no opinion about the decision to be made on remand but encourages the ALJ to do what is necessary to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See*

*Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions.").

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion [ECF No. 12] is granted, and the Commissioner's Motion [ECF No. 20] is denied. The decision of the Commissioner is reversed, and the matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 11, 2019